# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| YVONNE L. MURPHY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 215-29 |
| | * | |
| CITY OF BRUNSWICK, GEORGIA; and | * | |
| OFFICER CHRISTINE R. DHEEL, | * | |
| | * | |
| Defendants. | * | |

## ORDER

On March 3, 2015, Plaintiff Yvonne L. Murphy filed this suit against Defendants, the City of Brunswick, Georgia and Christine R. Dheel, an Officer of the Brunswick Police Department. Presently before the Court are two motions to dismiss filed by Defendants: one for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 6, and one based on Plaintiff's alleged failure to notify the Court of a change of her address. Dkt. No. 20. On July 16, 2015, Plaintiff moved for voluntary disqualification or recusal and for a change a venue. Dkt. No. 22. Upon due consideration, Plaintiff's Motion, Dkt. No. 22, is **DENIED**. Defendant's Motion to Dismiss for failure to state a claim, Dkt. No. 6, is **GRANTED**, and their second Motion to Dismiss, Dkt. No. 20, is **DENIED AS MOOT**.

### I. Background

On April 11, 2012, Plaintiff Yvonne L. Murphy contacted the Brunswick Police Department to report that over $2,500 in cash was stolen out of her car. Dkt. No. 1, ¶ 6; Dkt. No. 1-1, pp. 1-3. According to the police report attached to Plaintiff's Complaint, Plaintiff told the

1

police of her belief that a man named Carl Christ took the money from her car while she was at the residence of Kathy Stanley in Brunswick, Georgia. Dkt. No. 1-1, pp. 2-3. Lieutenant Christine Dheel is shown as the Reporting Officer on the police report. Dkt. No. 1-1, p. 3.

Plaintiff's primary allegation in this suit is that Defendants never investigated the crime committed against her on April 11, 2012. While Plaintiff makes additional allegations, all of them relate back to this central allegation. One wrong Plaintiff perceives is in the police report itself. On the top of the second page, a Comment states, "Vehicle left at owners [sic] request, Ga 303 and Ga 520. Also had owner sign vehicle impound waiver[.]" Dkt. No. 1-1, p. 2. Plaintiff alleges that these facts were substituted from a "falsified police report" describing an incident in 2009, and Plaintiff suggests that this new report is thus a false police report because of the presence of this incorrect information. Dkt. No. 1, ¶ 7. According to Plaintiff, the earlier incident involved the Glynn County Sheriff's Department, so Plaintiff alleges that it was wrong for the Brunswick Police Department to access a Glynn County database to obtain that information. Dkt. No. 1, ¶ 14 ("Defendant Dheel had accessed the data base [sic] of the Glynn County sheriff's department [sic], which is not the jurisdiction of the city police."). Plaintiff alleges that Defendant Dheel "sought to investigate Plaintiff and thus discriminated against her by ignoring a complaint of a criminal act in person." Dkt. No. 1, ¶ 10.

On December 4, 2012, Plaintiff filed a Citizen's Complaint with the Brunswick Police Department. Dkt. No. 1-2. A representative from the Police Department's Office of Internal Affairs, Lieutenant Russell D. Berger, responded to Plaintiff in a letter dated December 28, 2012. Dkt. No. 1-3.[1] The letter explained that Plaintiff's case was not selected for investigation based on several factors, including an upsurge in violent crimes and a manpower shortage in the unit

---

[1] In describing the police report, the letter stated that the report was filed on May 10, 2012. Though not in the Complaint, Plaintiff takes issue with this error in later briefs. See Dkt. No. 8, ¶ 5 ("In a fraud, Defendant [sic] allege that Plaintiff's Internal Affairs report was dated May 10, 2012").

responsible for criminal investigations. The letter concluded by stating that the criminal investigations unit would review Plaintiff's case again, and Lieutenant Berger would let Plaintiff know if her case was going to be assigned to a detective. Dkt. No. 1-3.

Plaintiff alleges that she contacted "Chief Green" of the Brunswick Police Department from January 8, 2013 to November 14, 2013 "warning the city of claims against it[,]" but he never responded. Dkt. No 1, ¶ 9. Plaintiff further alleges that she warned "Brunswick City Hall of potential civil rights complaints," and the City also did not respond. Id.[2]

Plaintiff makes an assortment of other related allegations. She asserts, for example, that there was a "policy of inaction that constituted the functional equivalent of a decision by the city itself to violate the U.S. Constitution" and that the City "advised Defendant Dheel to ignore Plaintiff." Dkt. No. 1, ¶¶ 1, 12. Plaintiff broadly asserts that Defendants have engaged in "disparate treatment, discrimination, bias and prejudice[.]" Dkt. No. 1, ¶ 12. Additionally, though not in the Complaint, Plaintiff alleges that the City has failed to train its police officers, leading to the deprivation of her constitutional rights. Dkt. No. 8, p. 7.

Plaintiff also makes allegations that Defendants falsified yearly statistical crime data submitted to federal authorities. Dkt. No. 1, ¶ 1. Plaintiff attached to her Complaint a document which appears to show different crimes broken down by month, and Plaintiff describes this as a document submitted by Defendants to the Federal Bureau of Investigation. Dkt. No. 1, ¶ 13. "Plaintiff believes her police record was not counted, but dismissed and destroyed[.]" Id.[3]

---

[2] Plaintiff attached copies of two faxes from January 2013 and a letter from November 2013 to her Response to Defendants' Motion to Dismiss. Dkt. No. 8-1, pp. 2-5. In the first two faxes, Plaintiff suggested that she was prepared to bring a federal lawsuit. The third letter, sent to the Brunswick Police Department, had the subject, "Notice of Intent to Sue (Civil Rights Violations)" and stated, "you are hereby notified that a suit is put forth[.]" Dkt. No. 8-1, p. 5.

[3] Plaintiff takes issue with the fact that Berger's letter to her cited violent crimes, including homicides, as one of the reasons her report was not investigated, when the document she attached to her Complaint showed there were no homicides from January to November of 2012. Dkt. No. 8, ¶ 6. It is not clear to the Court where the attachment to the Complaint is from or what it shows—there is no city name or identifying information anywhere on it. Dkt. No.

Plaintiff asserts that Defendants have violated her rights under the United States Constitution and the Georgia Constitution.[4] Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of her Fourteenth Amendment due process and equal protection rights. Plaintiff claims "$100,000.000.00 [sic] in compensatory/actual and punitive damages." Dkt. No. 1, ¶ 15.

## II. Motion for Voluntary Disqualification and Recusal and Motion for a Change of Venue (Dkt. No. 22)

Plaintiff moves for the disqualification and recusal of the undersigned and for a change of venue of this case. Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test for recusal under this provision is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality[.]" United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (citing Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988)).

In support of her request, Plaintiff cites her dislike and distrust of this Court. Plaintiff expresses dismay about the fact that Defendants filed two motions before being served, and the Court ruled against her on one of those motions, before Defendants were formally served with the Complaint. To the extent Plaintiff takes issue with rulings that have not come out in her favor, these do not constitute grounds for disqualification. See Liteky v. United States, 510 U.S. 540, 554 (1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or

---

1-3, p. 3. Nor is it clear why Plaintiff thinks the "TOTAL" number, on a table labeled "Actual Number of Offenses" represents the number of cases actually investigated rather than the number of offenses reported, or why she thinks her case is not included. See Dkt. No. 8, p. 7.

[4] While Plaintiff references the Georgia Constitution in her Complaint, she is adamant in her briefs that she is not asserting state law claims. Dkt. No. 8, ¶ 12 ("Plaintiff did not file a state claim against the Defendants in this court.").

partiality motion." Id. at 555 (citing United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)); see also Hamm v. Members of Bd. of Regents of State of Fla., 708 F.2d 647, 651 (11th Cir. 1983) ("Neither a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias") (citations omitted). To the extent Plaintiff complains about the fact that anything happened in the case before Defendants were formally served, as was later shown by Defendants, Plaintiff herself faxed the Complaint to Defendants, putting them on notice of the suit against them. Dkt. No. 16. Additionally, the service of process rules are designed to ensure that *defendants* have notice of the suits filed against them. If defendants find out about a suit without formal service and choose not to object to the fact that there has not been formal service, that is their choice, and they can proceed to file other motions, as the Defendants did in this case. This is not an unusual occurrence. See Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990) ("a party is deemed to have waived any objection to personal jurisdiction or service of process if the party makes a pre-answer motion under Rule 12 and fails to include such objections in that motion.") (citations omitted).

An objective observer viewing the facts of this case would see that the Court's conduct has been normal and impartial. As for Plaintiff's change of venue request, Plaintiff chose to bring her case here, and she has not cited any legal or factual basis for that request apart from the same reasons given for her recusal request. Because an objective lay observer would not doubt the undersigned's impartiality in this case, Plaintiff's motion is **DENIED**.

### III. Motion to Dismiss (Dkt. No. 6)

#### a. Legal Standard

When ruling on a motion to dismiss, the Court accepts as true the facts as set forth in the complaint and draws all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d

AO 72A
(Rev. 8/82)

701, 705 (11th Cir. 2010). The complaint must contain factual allegations sufficient to raise a right to relief above the speculative level, and at a minimum should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Plaintiffs must be able to "nudge[] their claims across the line from conceivable to plausible" to avoid dismissal. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "And to nudge the claim across the line the complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting Twombly, 550 U.S. at 555).

### b. Analysis

Defendants assert that Plaintiff's constitutional claims, brought under 42 U.S.C. § 1983, are time-barred. Plaintiff disputes this by stating that her interactions with Defendants "are continuous with a letter to city hall dated January 14, 2013. Plaintiff's claims are sufficiently related and thereby constitute a continuing pattern of wrongful conduct by Defendants." Dkt. No. 8, ¶ 3.

Plaintiff's Response to Defendants' Motion to Dismiss revealed some confusion about the use of the Georgia statute of limitations for personal injury claims in this suit, so the Court will attempt to clarify that at this time. See Dkt. No. 8, ¶ 5. Plaintiff has brought claims based on alleged violations of her constitutional rights and seeks money damages, and she has cited 42 U.S.C. § 1983 as the statutory vehicle for her claims. Because 42 U.S.C. § 1983 does not have a single statute of limitations that applies to the whole country, the federal court in which the suit

AO 72A
(Rev. 8/82)

is brought uses the statute of limitations for personal injury suits of the state in which the court is located. The United States Supreme Court has directed the lower federal courts to take this path. See Owens v. Okure, 488 U.S. 235, 236 (1989) ("courts entertaining claims brought under 42 U.S.C. § 1983 should borrow the state statute of limitations for personal injury actions."). Thus, even though Plaintiff's claims are for alleged violations of her constitutional rights, the statute of limitations used is that of Georgia personal injury claims, or two years. O.C.G.A. § 9-3-33 ("actions for injuries to the person shall be brought within two years after the right of action accrues"). Thus, in all § 1983 actions brought in Georgia, the statute of limitations is two years. Brown v. Ga. Dep't of Revenue, 881 F.2d 1018, 1022 n.10 (citations omitted).

Defendants argue that the statute of limitations on Plaintiff's claims began to run on the date of her alleged injury, or the date she reported the crime to the police, April 11, 2012. If this were true, the statute of limitations would have expired roughly 11 months before Plaintiff filed this suit. However, the statute of limitations begins to run when the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008). In January of 2013, Plaintiff, in her own words, warned Defendants of her claims. Dkt. No. 1, ¶ 9. Generously assuming the statute of limitations began to run on that late date, Plaintiff would have needed to file her suit by January of 2015 in order to comply with her statute of limitations.

As Plaintiff did not file her Complaint in this suit until March 3, 2015, over two years after she first warned Defendants of her claims, the statute of limitations on Plaintiff's claims has expired. Plaintiff's claims are dismissed, and Defendants' Motion to Dismiss is **GRANTED**.

IV. **Conclusion**

AO 72A
(Rev. 8/82)

In accordance with this Order, Plaintiff's Motion for Voluntary Disqualification and Recusal and for a Change of Venue, Dkt. No. 22, is **DENIED**. Defendants' Motion to Dismiss, Dkt. No. 6, is **GRANTED**, and Defendants' Motion to Dismiss for Failure to Notify Court of Change in Address is **DENIED AS MOOT**.

**SO ORDERED**, this 22ND day of July, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)

8